IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2005

**STATE OF TENNESSEE v. RONNIE WOODALL**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-01377     Chris Craft, Judge**

_____

**No. W2004-02358-CCA-R3-CD  - Filed September 12, 2005**

_____

The defendant, Ronnie Woodall, was convicted of rape of a child by a Shelby County jury and sentenced as a violent offender to twenty-two years in the Tennessee Department of Correction at one-hundred percent.  On appeal, the defendant challenges: (1) the sufficiency of the convicting evidence, and (2) the trial court's application of a sentencing enhancement.  Following our review of the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Tony N. Brayton (on appeal) and Rusty White (at trial) for the appellant, Ronnie Woodall.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Scott Bearup, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Facts and Procedural History**

The victim[1] was thirteen years old at the time of trial.  She testified that she was born on December 21, 1990, and that the defendant was her father.  She said that she had always had a good relationship with her father.  She testified that on the evening of December 26, 2002, she fell asleep in her mother's bed, but awoke the next morning to her father touching her.  The victim stated that the defendant, "was grabbing on [her] behind" and got on top of her when she tried to get out of the bed.  She recalled that the defendant pulled down his pants, pulled down her underclothes, and told her not to tell her mom.  The defendant then placed his penis in her vagina and did not use a condom.

_____
[1] It is the policy of this Court not to disclose the names of minor victims of sex crimes.

When asked how she was sure the defendant's penis went into her vagina, she expressed that "It hurt." She explained that she did not tell the defendant to stop because she was "shocked."

The victim testified that she left the room and tried to tell her brother what happened, but she could not because she was crying. The victim further testified that during the time between the incident and when her mother returned from work, the defendant, "gave [her] five dollars and told [her] not to tell [her] mom. And gave [her] a necklace and a ring and said it was [her] Christmas present." According to the victim, the defendant also gave a video game to one of the brothers who was asleep in the house when the rape occurred. When her mother returned from work, the victim told her mom that her dad had messed with her. At first, the defendant told her mother that the victim was lying, then he said he would beat her to death if her mother took her to the hospital and nothing was wrong with her. Her mother took her to the hospital where the victim talked to the police and was examined at the Rape Crisis Center.

Verdine Neal, the victim's mother, testified that she was the defendant's life partner and had known the defendant for fifteen or sixteen years. She testified that the defendant had a drug habit, but she never remembered him blacking out from his alcohol or drug use. Ms. Neal explained that the victim was asleep in her bed and the defendant was asleep on the couch in the living room when she left for work the morning of the incident. Upon returning from work that afternoon, the victim met her at the door crying and upset, saying that "her daddy had pulled down her pants and raped her." Ms. Neal also testified that after denying the allegations, the defendant said he would beat the victim to death if the hospital found nothing wrong with her. She took the victim to get examined at the Rape Crisis Center and they took her into protective custody. According to the victim's mother, the defendant called her the next morning and said, "I'm sorry, I didn't mean to do that." She told the defendant that the victim could not come home until he was locked up.

Patricia Speck, a forensic nurse at the Rape Crisis Center, testified to the facility's procedure of interviewing, examining, and treating victims of sexual assaults. Nurse Speck said that during her interview with the victim, the victim told her that the defendant, "pulled my clothes down . . . and he put it inside me," which she clarified to be his penis. While conducting the physical examination, the nurse discovered a recent, within twenty-four hours, hematoma to the hymen, indicative of unwanted sexual penetration.

Sergeant Paul Pritt, an investigator with the Sex Crimes Bureau, testified that after being advised of his rights, the defendant admitted to having sex with his daughter and promising her gifts. Officer Pritt recalled that he *Mirandized* the defendant before questioning him. Officer Pritt also stated that the defendant did not appear intoxicated. As Officer Pritt explained, he would have put a forty-eight hour hold on the defendant had he appeared intoxicated, but based on his observations he did not believe a hold was necessary. Officer Pritt testified that he observed the defendant sign and initial the waiver of rights form, which was identified and introduced into evidence. He also testified that the defendant did not do or say anything that suggested a lack of understanding regarding his rights. According to Officer Pritt, the defendant appeared truthful and his answers did not appear "crazy or non-sensible."

Agent Thomas Mitchell, formerly with the Sex Crimes Division of the Memphis Police Department, testified that he interviewed the defendant, during which the defendant confessed to having sex with his daughter. Agent Mitchell recounted that he was never led to believe the defendant was intoxicated while questioning the defendant. He explained that throughout the interrogation the defendant was seated so he could view the questions and answers on the monitor and had an opportunity to review his statement. Agent Mitchell stated that the defendant's statement confirmed the victim's statement regarding the rape. According to Agent Mitchell, the defendant said he sexually assaulted his daughter because he "felt like [he] was losing it." The defendant then initialed each page of his statement and signed the statement indicating that it was true and correct, and freely and voluntarily given.

On direct examination, the defendant discussed the extent of his drug and alcohol use the night before the alleged rape. He stated that he laid down on the couch and did not remember anything until the victim's mother came home the next afternoon. He testified that he never said he was going to beat the victim to death, but only that he would whip her for lying. He denied giving the victim money and gifts to keep quiet and not tell her mother. According to the defendant, the day after the alleged incident, the victim's mother called him and told him to go to Juvenile Hall and get the victim out of protective custody. He went to Juvenile Hall to sign release papers, but the next thing he knew he was at the police station. He testified that at this time he had not rested and had been drinking for hours. The defendant identified his initials and signature on his statement admitting to the rape, but asserted that he did not remember it. On cross-examination; however, he acknowledged that he could have had sex with the victim and could have given a confession statement, but just not remember.

## II. Analysis

### A. Sufficiency of the Evidence

The defendant first argues that the evidence was insufficient to support his conviction for rape of a child. He specifically denies the allegation of rape and contends that he was intoxicated and unable to remember the alleged assault on his daughter.

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this Court why the evidence will not support the jury's verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be

drawn from that evidence. Carruthers, 35 S.W.3d at 558; Tuggle, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002); Bland, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. See State v. Elkins, 102 S.W.3d 581, 582 (Tenn. 2003); Reid, 91 S.W.3d at 277.

Rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a) (2003). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Id. § 39-13-501(7). Therefore, the State was required to prove beyond a reasonable doubt that the victim was less than thirteen years of age and that the defendant intentionally, knowingly, or recklessly engaged in sexual penetration of the victim.

Viewing the evidence in the light most favorable to the State, the evidence is sufficient to establish beyond a reasonable doubt that the defendant intentionally, knowingly, or recklessly sexually penetrated the victim. The victim's testimony clearly indicates that she was twelve years old when the defendant used his penis to sexually penetrate her vagina. The physical examination of the victim supports her testimony. Also, two police officers testified that the defendant confessed to having sex with the victim and he did not appear intoxicated when he confessed. The victim's mother testified that after the victim told her she was raped by the defendant, the defendant threatened the victim stating he would beat her to death. The victim's mother also testified the defendant telephoned her and apologized. We further note that the defendant conceded at trial that the events in question could have occurred and he acknowledged his initials and signature on the confession statement. We conclude that a rational trier of fact presented with this proof could have found beyond a reasonable doubt that the defendant was guilty of this offense.

## B. Sentencing Enhancement

The defendant also argues that the trial court erred in applying sentencing enhancement factor sixteen, that the defendant abused a position of private trust. Specifically, he argues that the trial court erred because the jury did not find that factor beyond a reasonable doubt. The defendant maintains that the United States Supreme Court holdings in Blakely v. Washington and Apprendi v. New Jersey require that a jury find, beyond a reasonable doubt, any fact that increases the penalty for a crime beyond the statutory maximum. Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004); Apprendi v. New Jersey, 530 U.S. 466 (2000).

At the conclusion of the sentencing hearing, the trial court found one applicable enhancement factor by a preponderance of the evidence. The court found that the defendant abused a position of

-4-

public or private trust that significantly facilitated the commission of the offense. See Tenn. Code Ann. § 40-35-114(16).[2] The trial court noted that the victim was left in the care of the defendant because he was her father and he was expected to take good care of her. The trial court also placed "particularly great weight" on the evidence that the defendant abused the position of private trust that the victim's mother placed in him. The trial court did not find the presence of any mitigating factors. Based on the presence of an enhancement factor and no mitigating factors, the trial court sentenced the defendant to twenty-two years for his rape of a child conviction.

As a Range I standard offender convicted of a Class A felony, the defendant was subject to a sentence of fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). At the time of sentencing, the statute prescribed that, "The presumptive sentence for a Class A felony shall be the midpoint of the range if there are no enhancement or mitigating factors." Id. § 40-35-210(c). The statute further dictated that, "Should there be enhancement but no mitigating factors for a Class A felony, then the court shall set the sentence at or above the midpoint of the range." Id. § 40-35-201(d). This Court has determined that the trial courts' application of an enhancement factor is proper if established by a preponderance of the evidence. State v. Ward, 138 S.W.3d 245, 282 (Tenn. Crim. App. 2003).

The United States Supreme Court concluded in Blakely that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Blakely, 124 S. Ct. at 2536 (quoting Apprendi, 530 U.S. at 490). The Court made it clear that the relevant statutory maximum "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 124 S. Ct. at 2537. The Blakely Court further noted that the Sixth Amendment right to a jury trial is "no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." Id. at 2538-39.

In State v. Gomez the Tennessee Supreme Court took the opportunity to rule on the constitutionality of the Tennessee Criminal Sentencing Reform Act of 1989, "Reform Act," in light of the Blakely decision. The court held that the Reform Act does not violate the Sixth Amendment to the United States Constitution. State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005). In so holding, our supreme court noted that the Reform Act gives judges the discretion to select an appropriate sentence within a predetermined statutory range, but not the authority to impose a sentence outside the statutory range. Id. at 659. The Tennessee Supreme Court noted that the Reform Act is a discretionary, non-mandatory, advisory sentencing scheme where the trial judge considers the principles of sentencing and engages in a qualitative analysis of enhancement and mitigating factors. Id. Under the Reform Act, the finding of an enhancement factor does not

---

[2] The sentencing guidelines have since been modified. Modifications include the renumbering of enhancement factors and the indication that application of enhancement factors is advisory, not mandatory. See Tenn. Code Ann. § 40-35-114.

mandate an increase in the defendant's sentence. Therefore, the court determined that the Reform Act does not violate the Sixth Amendment guarantee of a jury trial by allowing the judiciary to infringe on the province of the jury, and accordingly, not affected by the <u>Blakely</u> decision. <u>See</u> <u>id.</u> Because our supreme court in <u>Gomez</u> clearly held that our sentencing structure does not violate the Sixth Amendment, the defendant is not entitled to relief on his issue regarding application of a sentencing enhancement factor based solely upon a <u>Blakely</u> challenge, if the sentence is proper. The sentence of twenty-two years is within the statutory range for a Range I standard offender, and we conclude that it was proper for the trial court to so sentence the defendant.

### III. Conclusion

After a careful review of the record and the issues presented by the defendant, and upon consideration of our supreme court's decision in <u>Gomez</u>, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE